## W. I. FITCH v. THE STATE.

### No. 492. Decided March 2, 1910.

### Rehearing May 4, 1910.

**1.—Selling Intoxicating Liquors—Local Option Territory—Occupation—Constitutional Law—Separate Offense.**

The Act of the Thirty-first Legislature, making it a penitentiary offense to engage in the business or occupation of unlawfully selling intoxicating liquors in local option territory is a valid law; and it applies to territory that had previous to the enacting of said law adopted local option. Davidson, Presiding Judge, dissenting.

**2.—Same—Legislative Power—Will of People.**

The adoption of local option laws by the people does not withdraw this territory from legislative control to pass all needful legislation to make the local option laws effective, and to see that the will of the people is carried out.

**3.—Same—Power of Legislature—Local Option.**

The power to legislate for the efficient enforcement of local option laws is not taken away from the Legislature after the adoption of local option, but only for those offenses that are defined and punishment attached which were in existence at the time the people adopted local option. Distinguishing Lewis v. State, recently decided.

**4.—Same—New and Distinct Offenses.**

After the adoption of local option in any given territory, the legislative power is not withdrawn from the Legislature, and it is not prohibited from passing any additional legislation defining new and distinct offenses and prescribing penalties therefor.

**5.—Same—Constitutional Law—Legislative Power—Vote of People.**

Under section 20, of article 16, of the Constitution of Texas, unless there are some restrictions growing out of the local option law as adopted by the people, which may be construed as a part of the law itself, the power of the Legislature to enact all suitable and necessary laws for the enforcement of the will of the people on the subject of local option is not in the least interfered with or limited; and it is not required that the Legislature submit to the voters the law which may thereafter be enacted to enforce prohibition. Davidson, Presiding Judge, dissenting.

**6.—Same—Business—Occupation—Sale.**

Carrying on a business or occupation of selling intoxicating liquors is a distinct and separate offense from that of the sale of intoxicating liquors; as a person can sell a thing without being in the business generally; and there is no constitutional restriction upon the power of the Legislature to define such occupation a separate and distinct offense from the ordinary sale, and make the same applicable to such territory; and this after the people have adopted local option. Following Schwulst v. State, 52 Texas Crim. Rep., 426; Joliff v. State, 53 Texas Crim. Rep., 65; Ex parte Dupree, 101 Texas, 150; 105 S. W. Rep., 493.

**7.—Same—Differentiation of Legislative Acts—Statutes Construed—Legislative Intention.**

It was evidently intended by the Legislature, in passing the Act of the Thirty-first Legislature making it a felony to unlawfully pursue the occupation of selling intoxicating liquors in local option territory, to use language that would show that the express legislative intent was to make this Act operative in territory that had theretofore adopted local option as well; and which language was wholly dissimilar from the language used in the Act of the same Legislature in amending article 402, Penal Code, making it a penitentiary offense to sell intoxicating liquor in local option territory, and which operates on territory thereafter adopting local option.

**8.—Same—Repeal by Implication not Favored.**

The Act of the Thirty-first Legislature, making it a felony to unlawfully carry on the business of selling intoxicating liquors in local option territory, is not repealed by implication by another Act of the same Legislature amending article 402, Penal Code, with reference to the sale of intoxicating liquors in local option territory. Following Cain v. State, 20 Texas, 355; Joliff v. State, 53 Texas Crim. Rep., 61.

**9.—Same—Insufficiency of the Indictment.**

In a prosecution for unlawfully following the business and occupation of selling intoxicating liquors in local option territory, where the indictment failed to allege to whom the required sales were made within the time specified by the law, the same was insufficient and bad upon motion to quash. Ramsey, Judge, dissenting.

**10.—Same—Charge of Court—Definition of Occupation.**

Where, upon trial of unlawfully pursuing the occupation of selling intoxicating liquor in local option territory, the court in his charge failed to direct the jury that before they could convict the defendant, the State must prove at least two sales within the prescribed time, there was reversible error.

**11.—Same—Charge of Court—Definition of Occupation.**

In a prosecution of unlawfully pursuing the business and occupation of selling intoxicating liquors in local option territory, there was no error in the court's refusal to submit a requsted charge defining the term occupation or business in its usual and enlarged meaning; as the law does not require that such business under the Act of the Thirty-first Legislature should be the defendant's principal business; if the defendant followed said business secretly or whenever opportunity offered. it would come within the scope of said Act; but the court should have defined such business or occupation within the meaning of said Act.

**12.—Same—Business—Occupation—Sufficiency of the Evidence.**

Where, upon trial of unlawfully pursuing the business of selling intoxicating liquor in local option territory, the evidence showed that the defendant was the manager of a certain club, the sole object of which was to procure beer to be drunk by the members of said club; that it was not shown how the club would get a sufficient number of members to vote on the admission of new members; that the club had no written by-laws, etc.; and that the same was operated in violation of the local option law, the evidence was sufficient to sustain the conviction. Following Feige v. State, 49 Texas Crim. Rep., 513.

Appeal from the District Court of McLennan. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of unlawfully pursuing the business of selling intoxicating liquors in local option territory; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*W. W. Ballew* and *Scott, Sanford & Ross,* for appellant.—It is not within the power of the Legislature to add to or take from or in any manner infringe upon the local option law as adopted by the voters of any locality, nor has the Legislature the power to amend the punishment, either by increasing or diminishing same after the law has been adopted, but such amendment can only apply and be operative in localities which may adopt the local option statute subsequent to the adoption of the amendment. Dawson v. State, 25 Texas Crim. App., 670; Lawhon v. State, 26 Texas Crim. App., 101; Robinson v. State, 26 Texas Crim. App., 82; Ex parte Bains, 39 Texas Crim. Rep., 62; McElroy v. State, 39 Texas Crim. Rep., 529; Snearley v. State, 40 Texas Crim. Rep., 507; Ex parte Brown, 38 Texas Crim. Rep., 295; Ex parte Elliott, 44 Texas Crim. Rep., 575; Adams v. Kelly, 44 S. W. Rep., 529; Medford v. State, 45 Texas Crim. Rep., 180, 74 S. W. Rep., 768; Ex parte Elliott, 44 Texas Crim. Rep., 575, 72 S. W. Rep., 837; Ex parte Fields, 86 S. W. Rep., 1022; Woods v. State, 75 S. W. Rep., 37; Nelson v. State, 75 S. W. Rep., 502; Ex parte Pollard, 51 Texas Crim. Rep., 488, 103 S. W. Rep., 879; Oxley v. Allen, 107 S. W. Rep., 945.

The Legislature is not empowered or authorized to either directly, or indirectly interpret, or declare the construction of a constitutional provision, nor to abrogate the settled judicial construction of a constitutional provision and the Act of the Thirty-first Legislature, under which appellant is prosecuted, is an indirect attempt to abrogate the settled judicial construction of the power of the Legislature in regard to section 20, article 16, of the Constitution, and is therefore void insofar as said law can be applied to any territory or subdivision of a county that had theretofore adopted local option. Powell v. State, 17 Texas Crim. App., 345; Thomas v. State, 40 Texas Crim. Rep., 562; Parchman v. State, 2 Texas Crim. App., 228; Fletcher v. Peck, 6 Cranch, 87; Wayman v. Southard, 10 Wheat., 1; Greenough v. Greenough, 11 Pa. St., 489; Calhoun v. McLendon, 42 Ga., 405.

If the Act of the Legislature making it a felony to pursue the occupation or business of selling intoxicating liquors in a prohibition precinct or territory was not repealed by Act of the Thirty-first Legislature, amending article 402 of the Penal Code, then said indictment failed to charge an offense for the reason that the two statutes referred to make the same acts constitute an offense and these acts are punished differently, and neither can be enforced by virtue of article 3 of the Code of Criminal Procedure on account of the want of certainty in the indictment. Orr v. Rhine, 45 Texas, 352; Smith v. State, 44 Texas, 443; Davis v. State, 2 Texas Crim. App., 425; Chiles v. State, 1 Texas Crim. App., 27; Dickinson v. State, 38 Texas Crim. Rep., 472, 41 S. W. Rep., 759; Harrington v. Trustees, 10 Wend, 547; Bowen v. Lease, 5 Hill, 221; Williams v. Potter, 2 Barb., 316; Van Rensselaer v. Snyder, 9 Barb., 302; Maddox v. Graham, 2 Met. (Ky.), 56; Dickinson v. State, 38 Texas Crim. Rep., 472; Cain v. State, 20 Texas, 355.

Authorities that if the law is not repealed by amendment to article 402, Penal Code, neither statute can be enforced. Cooper v. State, 25 Texas Crim. App., 530; article 3, Code Crim. Proc.; opinion of Judge Roberts, in Cain v. State, 20 Texas, 355; Holden v. State, 1 Texas Crim. App., 225; Ex parte Garza, 28 Texas Crim. App., 381.

The court erred in refusing to quash the indictment because it charged no offense in this that it did not allege that appellant had made two sales of intoxicating liquors in precinct No. 5, McLennan County, Texas, prior to the indictment and subsequent to the time the Act became effective, and did not allege to whom intoxicating liquor had been sold by the appellant, and the indictment was too vague, indefinite and uncertain to place appellant upon notice of the facts which he would be called upon to refute. United States v. Mills, 7 Peters, 138; United States v. Cook, 17 Wall., 168; United States v. Cruikshank, 92 U. S., 542; State v. McCormack, 22 Texas, 297; Alexander v. State, 29 Texas, 496; Huntsman v. State, 12 App., 619; Calvin v. State, 25 Texas, 789; Hewitt v. State, 25 Texas, 722; State v. Wilburn, 25 Texas, 738; State v. Duke, 42 Texas, 455; Williams v. State, 12 App., 395; Pitner v. State, 23 App., 366; Treadwell v. State, 16 App., 643.

That the name of the party to whom the liquor is sold must be stated in the indictment: Dixon v. State, 21 App., 517; Drechsel v. State, 35 Texas Crim. Rep., 577, 34 S. W., 932; Martin v. State, 31 App., 27.

It is error to refuse a special charge correctly presenting the law upon an issue made by the evidence and not embraced in the general charge of the court. The court, in his general charge to the jury, did not define the meaning of occupation. The defendant requested a special charge which was approved by this court in Cohen v. State, 53 Texas Crim. Rep., 422, 110 S. W. Rep., 66, which charge was refused by the court. Cohen v. State, 53 Texas Crim. Rep., 422, 110

S. W. Rep., 66; Scott v. State, 110 S. W. Rep., 69. Authorities cited under Cohen v. State.

If the beer purchased and used by the K. Club belonged to the members of the club and had been purchased by them on their account and for their use and benefit by the defendant, and the defendant merely acted as the agent or representative of the club in ordering and keeping liquors for the club to be divided among them according to a previously arranged system, these facts would not constitute the sale of intoxicating liquors nor the engaging in or pursuing the occupation of selling intoxicating liquors in local option territory. Koenig v. State, 33 Texas Crim. Rep., 367; Austin Club v. State, 89 Texas, 20; Martin v. State, 59 Ala., 34; Piedmont Club v. Commonwealth, 87 Va., 540; Club of Memphis v. Dwyer, 11 Lea (Tenn.), 452; State v. Boston Club (La.), 12 S. Rep., 895; Graff v. Evans, 8 Q. B. Div., 373; Seim v. State, 55 Md., 566; Commonwealth v. Smith, 102 Mass., 144; Commonwealth v. Ewig, 145 Mass., 119; Circle Francais de L'Harmonie v. Franch, 44 Hun, 123; State v. McMaster, 14 S. E., 290.

*John A. Mobley,* Assistant Attorney-General, for the State.—It will be conceded that without express authority in the Constitution to do so, the Legislature delegated no legislative power to the people of the given locality. City of Evansville v. State, 118 Ind., 426, 4 L. R. A., 93. Such is the definition given by Cooley.

The fact that the people by their vote determine a contingency upon which legislation shall be effective, by no means indicates that they perform a legislative function or exercise a legislative power. Cooley on Constitutional Limitations, 7th ed., 164. If the operation of our local option laws depends upon the performance of a legislative power or function by the voters of subdivisions, then such laws are void, because authority for the delegation of such power not being contained in the Constitution, any effort to delegate such authority, is wholly void. Willis v. Owen, 43 Texas, 41; Brewer Brick Co. v. People, 62 Maine, 62; Locke's Appeal, 72 Pa., 491; Cooley on Const. Limitations, 141. Insofar as the people's option in the matter is concerned the statute denouncing as a felony the sale of liquor in local option territory, neither adds thereto nor takes therefrom. Their option being limited entirely to a determination of the question of "whether the sale shall be prohibited."

In the adoption of the provisions of the Constitution above referred to, the framers of the Constitution must be understood to have employed words in their natural sense and to have intended what they said. Only intelligent people make Constitutions, and when they are made they are worded with great care and circumspection. This provision of the Constitution is followed by section 23 of said article, the wording of which indicates clearly that the framers of the Constitution were not ignorant of a different method of expression. Section 23 referred to relates to stock laws and closes with this provision: "Pro-

vided, that any local law thus passed shall be submitted to the freeholders of the section to be affected thereby, and approved by them before it shall go into effect." By similar wording of section 20 it could easily have been made to mean what appellant contends it does mean. No such wording was used. Article 16, section 23, Constitution of Texas; Black on Intoxicating Liquors, p. 57; Locke's Appeal, 72 Pa. St., 491; Ex parte Mato, 19 Texas Crim. App., 112.

This necessarily implies the right to vote into effect and out of effect the operation of the law. It necessarily, likewise, implies that in the time duration of the operation of such law within that territory the people have a right, which right may not and can not be taken from them by the Legislature. Such right, however, it seems clear, comes from the peculiar wording of the constitutional provision above referred to and not from the fact that they adopt or enact the law. This they do not do. Black on Intoxicating Liquors; Locke's Appeals, 72 Pa. St., 491; Ex parte Mato, 19 Texas Crim. App., 112; Joliff v. State, 53 Crim. Rep., 61; Ex parte Dupree, 101 Texas, 150, 105 S. W. Rep., 349; Clopton v. State, 105 S. W. Rep., 994.

Any other conclusion except the one above urged in our opinion necessarily implies that the people of the various subdivisions may upon the question of the sale of intoxicating liquors exercise, and that they possess legislative power. Such power has by our Constitution been given to the legislative department as will be seen from an examination of section 20 above; the Constitution has not expressly given to the Legislature authority to delegate this power. Without such express authority to delegate the same does not exist, and any effort to so delegate or transfer the legislative power will be under such circumstances absolutely void. Willis v. Owen, 43 Texas, 41; Brewer Brick Co. v. People, 62 Maine, 62 and 451; Locke's Appeal, 72 Pa., 491; Cooley's Const. Limitations, 141.

The mere determination of a contingency upon which a statute may take effect is not a delegation of legislative authority. Brig. Aurora v. U. S., 7 Cra., 382; Walton v. Greenwood, 60 Me., 356; Baltimore v. Clunet, 23 Md., 449; Lothrop v. Stedman, 42 Conn., 583; Burlington v. Leebrick, 43 Iowa, 252.

McCORD, JUDGE.—Appellant was tried and convicted on an indictment charging him with pursuing the business or occupation of selling intoxicating liquors in local option territory in violation of law and his punishment assessed at three years in the State penitentiary.

There was enacted by the Thirty-first Legislature an Act making it a felony to pursue the occupation of selling intoxicating liquors in local option territory. See p. 284, Laws of the Thirty-first Legislature. This Act is as follows: "Section 1. If any person shall engage in or pursue the occupation or business of selling intoxicating liquors except as permitted by law, in any county, justice precinct, city, town or subdivision of a county in which the sale of intoxicating liquor has

been or shall hereafter be prohibited under the laws of this State, he or she shall be punished by confinement in the penitentiary not less than two nor more than five years.

"Sec. 2. In prosecutions under this Act, where it is proven that there is posted up at the place where such intoxicating liquor is being sold, United States internal revenue liquor or malt license to anyone, it shall be prima facie proof that the person to whom such license is issued, is engaged in and is pursuing the business and occupation of selling intoxicating liquors within the meaning of this Act.

"Sec. 3. In order to constitute the engaging in or pursuing the occupation or business of selling intoxicating liquors within the meaning of this Act, it shall be necessary for the State to prove in all prosecutions hereunder that the defendant made at least two sales of intoxicating liquor within three years next preceding the filing of the indictment.

"Sec. 4. The inadequacy of the laws of this State to prohibit the unlawful sale of intoxicating liquors in the counties, justice precincts, cities, towns and other subdivisions of this State where the sale of intoxicating liquor has been prohibited by law, creates an emergency and an imperative public necessity, demanding the suspension of the constitutional rule requiring bills to be read on three several days, and the rule is so suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted." On the trial of the case in the court below appellant made a motion to quash and dismiss the indictment upon the ground that the Legislature had no power to change the penalty for the alleged violation of the local option law after the people of a county, subdivision of a county, precinct, etc., have adopted said law; and that the Legislature had no power to create new offenses and greater penalties than those in force when said law was adopted; and that the District Court of McLennan County was without jurisdiction of said offense because of the above facts. The indictment alleged that the appellant engaged in the occupation of selling intoxicating liquors in justice precinct No. 5 of the county of McLennan, and that this business was unlawfully carried on by the appellant after the qualified voters had adopted local option in said precinct.

We are confronted here with the question, whether the offense charged in this indictment is an amendment to the law with regard to sales, or whether said Act creates a new, separate and distinct offense? And whether the Legislature had power to legislate, create and define new offenses other than those in force when local option was adopted, after the adoption of local option? At the threshold of the consideration of this case we are confronted with this proposition: After the adoption of local option in any given territory, is all legislative power withdrawn and is the Legislature prohibited from passing any additional legislation, defining new offenses and prescribing new penalties for these offenses? Commencing with the Dawson case, 25 Texas Crim. App.,

670, through an unbroken line of decisions down to and including the case of Lewis v. State, this day decided, it has been held that any Act of the Legislature amending the penalty attached to the sale of intoxicating liquors within local option territory, will not apply to territory that has adopted local option previous to that Act of the Legislature. However, in none of these cases is the contention made or is it announced that after the people have adopted local option, the Legislature is denied the right to pass all needful legislation to make effective the law that has been adopted by the people; and when the people adopt local option they not only have a right to make the demand upon the Legislature, but the obligation is binding upon the Legislature under the Constitution of the State to see that all necessary legislation is enacted to make successfully effective the enforcement of the law in the prohibited territory. Section 20 of article 16 of the Constitution directs the Legislature to pass laws whereby the people from time to time may determine whether the sale of intoxicating liquor shall be prohibited within the prescribed limits. Under this constitutional provision, unless there are some restrictions growing out of the local option law, as adopted by the people, which may be construed as a part of the law itself, the power of the Legislature to enact all suitable and necessary laws for the enforcement of the will of the people on the subject of local option, is not in the least interfered with or limited; nor does it require or authorize the Legislature to submit to the voters the law which may thereafter be enacted to enforce prohibition. The same would be within the power of the Legislature to enact and it would become immaterial that the Act was not the law at the time local option was adopted. The first Act of the Legislature passed under the Constitution was in 1876, and that Act, which has been amended frequently since, provided for a punishment for the sale of intoxicating liquors in prohibition territory. That was the only offense defined by the Legislature. A penalty was prescribed by that law making it a finable offense only. In 1887 that law was amended, defining sales and adding a penalty therefor with the additional penalty of imprisonment in the county jail. This has remained the law ever since until the Act of the Thirty-first Legislature. At the time of the adoption of local option in precinct 5, McLennan County, the Legislature had designated no new offenses within local option territory. If this law, passed by the Thirty-first Legislature, can be construed as an amendment to the law defining and punishing a sale of intoxicating liquors, then we think that it would have to pass out and could not be enforced in territory that had already adopted local option; but if it is a separate and distinct offense, we think that the Legislature would have the right to define such an offense, prescribe the penalty for the same, and that said offense could be enforced in territory where local option prevailed at the time of the passage of such a law. The Legislature could have enacted a law simply submitting to the people the question of whether they would have local option

or not, and subsequently have enacted a law and defining offenses in order to carry the result of the vote of the people into effect. See Ex parte Dupree, 101 Texas, 150, 105 S. W. Rep., 493. And if the only crime that had been defined by the Legislature at the time that matter was submitted to the people, was simply a sale with the penalty attached to it, and the people voted on the law with that offense defined, this would not take away from the Legislature the right to define new offenses within the prohibited territory. All legislative power is vested in the Legislature and can not be exercised by any other body, except as provided by the Constitution. We, therefore, hold that the power to legislate for the efficient enforcement of local option laws is not taken away from the Legislature after the adoption of local option, but only for those offenses that are defined and punishment attached which were in existence at the time the people adopted local option; and that if new offenses grow out of the violation of this law that can not be covered by the laws already in existence, the duty and obligation rests upon the Legislature to see that efficient laws are passed to meet each new emergency. If an element should invade local option territory opposed to the enforcement of local option laws and should throw its force against the will of the people and by its craft and cunning devise schemes and means to defeat the purpose of the law and invent a method whereby, through the forms of law, they should evade the crime that had been defined by the Legislature, it would be a monstrous doctrine to hold that the Legislature is powerless to enact legislation defining offenses and prescribing penalties for the new conditions that may arise because the same was not an offense at the time that local option was adopted. As said by this court in Ezzell v. State, 29 Texas Crim. App., 521: "The Legislature is not only empowered to pass such laws, but it is obligatory upon said body to pass same and make them effective. It is not a question of delegated power, but is a command to that body to enact laws for the purpose and object stated in said provision of the Constitution (that is section 20, article 16). The authority to create the law carries with it the power to provide adequate penalties to punish violations thereof when the laws have been put into operation." The Ezzell case was where the appellant was tried and convicted for violating the local option law. At the time the people of his county adopted local option, the Legislature had not provided that if a man was indicted and the indictment pending at the time of the repeal of the law by the people, that he could still be punished. This law was subsequently passed in 1887, and he attempted in the court below to invoke the provisions of section 20, article 16, and contended that the enactment of that amendment by the Legislature after the adoption of local option by the people would not apply to his case. This doctrine was held unsound by this court in the above opinion.

Now, is carrying on a business a separate and distinct offense from a sale? Volume I, Words and Phrases Judicially Defined, says: The

word "business" is defined by Webster as that which occupies the time, attention, or labor of men for the purpose of profit or improvement. Business "is that which busies or occupies the time, attention or labor of one as his principal concern, whether for a longer or shorter time; employment; occupation; any particular occupation or employment; mercantile transactions in general; concern; right or occasion of making one's self busy; affairs; transaction." A holding of one's self out to do a particular thing. In fact, it is not debatable that business is not the same thing as a sale. While business carries with it the elements of barter and trade, a person can sell a thing without being in the business generally of doing the thing regularly. That the power is in the Legislature to define new offenses after the people have adopted local option and make them applicable to that territory, we refer to what is commonly known as the "Blind Tiger" statute, brought forward in the Penal Code as article 406, which article is as follows: "If any person shall keep or run, or shall be in any manner interested in keeping or running a blind tiger in any county, justice precinct, city or town in which the sale of intoxicating liquor has been prohibited under the laws of this State, he shall be punished by confinement in the county jail not less than two nor more than twelve months, and by fines of not less than one hundred nor more than five hundred dollars. Each and every day such blind tiger is run or kept shall be a separate offense. A "blind tiger," within the meaning of this article, is any place in which intoxicating liquors are sold by any device whereby the party selling or delivering the same is concealed from the person buying or to whom the same is delivered. Upon complaint being filed with any justice of the peace, describing the place where any "blind tiger" is kept or run, such justice shall issue his warrant directed and commanding the sheriff or any constable of his county to search such place, and if the law is being violated to arrest the person so violating it; and it shall be the duty of the officer to whom such warrant is delivered to search the place described in the warrant, and to arrest and bring before the justice who issued the writ all persons found by him therein; and if admission into said place is refused, the officer executing said warrant is hereby authorized to force open the same. In prosecutions under this article, where it is proven that there is posted up at the place where such blind tiger is kept or run, United States internal revenue liquor or malt license, to anyone it shall be prima facie proof that the person to whom such license is issued is keeping and running such blind tiger." This article prescribes a different penalty to that for the sale of intoxicating liquor. It was passed at the same session of the Legislature that increased the penalty for the sale of intoxicating liquor. The constitutionality of this Act has never been assailed. The first case of which there is any record is the case of Segars v. State, 35 Texas Crim. Rep., 45, and the constitutionality of the Act was not assailed in the trial of that case. Commencing with the Floeck case, 34 Texas Crim. Rep.,

314, down to and including the Schwulst case, 52 Texas Crim. Rep., 426, when for the first time the constitutionality of this Act was assailed but was disposed of very summarily by this court, Presiding Judge Davidson saying: "We think the statute defining and prohibiting the sale of liquor by means of a blind tiger is not violative of any constitutional provision, and it is within the power of the Legislature to prohibit sales of intoxicants in this manner, and prescribe a higher punishment for this character of sale than is provided against other characters of sale." Here is a separate and distinct offense defined by the Act of the Legislature and the fact that the constitutionality of this Act was questioned but once and the summary manner in which it is disposed of by the court, clearly establishes that it was always recognized that the power was in the Legislature to create new offenses and define penalties in territory that had already adopted local option. It is no answer to this proposition to say that this court and the profession overlooked the importance of the question in this case and overlooked the line of decisions commencing with the Dawson case, supra, which stood out so prominently in the judicial history of this court. The courts have not stopped here.

The Thirtieth Legislature passed an Act amending the law with respect to disorderly houses and made a person who sold intoxicating liquors without license, the keeper of a disorderly house. A man by the name of Joliff was indicted and convicted for the violation of this law and appealed the same to this court and the constitutionality of said law was assailed on the ground that it was in conflict with the constitutional provision on prohibition and could not be made to apply to a territory that already had local option. This court held adversely to this contention and speaking through Judge Ramsey, said: "If, however, the State contends this court should assimilate the Act in question to a law by its terms limited to local option territory, then they insist that such Act dealing, as it does, with the sale of intoxicating liquors, and being germane to the main subject and considered by the Legislature as a necessary auxiliary to the enforcement of the will of the people, as expressed by the adoption of local option, the same should be held by every test as a valid law. We are inclined to believe that both of these contentions of the State are correct." See Joliff v. State, 53 Texas Crim. Rep., 61. So both by reason and authority the contention here considered must be held adversely to appellant. In the case of Ex parte Dupree, 101 Texas, 150, 105 S. W. Rep., 493, the Supreme Court, in passing upon the search and seizure law, which was another law auxiliary to the enforcement of local option, and in which the contention was made that it could not apply to Brown County, because Brown County was under the local option law at the time of the passage of the Act, says: "The Constitution does not require the Legislature to submit to the vote of the people the law which is necessary to enforce prohibition, and it has not done so. That is a proper subject for legislative action." It might be said that no

authority can be found that has ever held that the power is not in the Legislature to pass all needful legislation to enforce prohibition and that it is not essential to the validity of such laws to submit them to a vote of the people. In the case of Dupree v. State, 102 Texas, 455, 119 S. W. Rep., 301, our Supreme Court, speaking through Justice Williams, said: "The proposition that only sales may be prohibited has sometimes been thought to imply the further one that the prohibition can only be enforced by denouncing and punishing as an offense the completed sale. This restricts the power granted within too narrow limits." Again: "The purpose of the prohibition is to prevent the thing prohibited, and this provision of the Constitution prescribes no scheme of legislation by which that is to be done, but leaves the choice of the methods to the lawmaking power. There is nothing whatever in the provision which, in our opinion, should be construed as denying the power to prevent sales which are prohibited by any legitimate remedies appropriate to that end. Prevention of crime is one of the objects to which the most anxious thoughts and the most constant efforts of thoughtful legislators are directed, and the dealing with the steps preparatory to commission is a favorite method. Our Codes are full of instances of this, too numerous and too familiar to need citation."

We, therefore, hold that the Act of the Thirty-first Legislature making it a penitentiary offense to engage in the business or occupation of selling intoxicating liquors in local option territory is a valid law; that the same applies to territory that had previous to the enacting of said law adopted local option, and that the adoption of local option laws by the people does not withdraw that territory from legislative control to pass all needful legislation to make the local option laws effective, and to see that the will of the people is carried out. We, therefore, hold that the court below did not err in holding that the law was applicable in precinct No. 5, of McLennan County, which had previously adopted the local option law. There is still another view to take of this matter. It will be observed that the language of section 1 of the Act provides that "if any person shall engage in or pursue the occupation or business of selling intoxicating liquors except as permitted by law, in any county, justice precinct, city, town or subdivision of a county in which the sale of intoxicating liquor *has been* or *shall hereafter be prohibited* under the laws of this State." Article 402 as amended by the Act of the Thirty-first Legislature does not use the language as above underscored, that article making it a penitentiary offense to sell intoxicating liquors. An inspection of the Act clearly shows that the Legislature intended that it should be a violation of law to carry on the business in a territory not only that hereafter might adopt local option, but also in the territory that already had local option; and this language in the statute differentiates this case from the case of Lewis v. State, this day decided. One of the reasons stated by this court for holding that the increased penalty for the sale of intoxicating liquors could not apply to a territory that had

previously adopted local option, is that "when the Legislature attempts to amend or revise a statute which has heretofore received a judicial construction, it is presumed that the Legislature intended the same construction should continue to be applied to that statute, and in the interpretation of reenacted statutes the court will follow the construction which they received when previously in force, and the Legislature will be presumed to know the effect which such statutes originally had and by the reenactment to intend that they should again have the same effect." Evidently, it was intended by the Legislature in passing the Act in question to use language that would show that the express intention of the Legislature was to make this statute operative in territory that had heretofore adopted local option; and that in the enactment of this statute the Legislature had in mind the construction that had been placed upon article 402 by this court; and in the enactment of this statute it used language wholly dissimilar from the language used in article 402, showing evidently that the Legislature intended to make this a separate and distinct offense from an ordinary sale, and to expressly make it operative in a local option territory that had previously adopted local option, and to leave the same free from cavil or speculation.

2. It is contended that this law was repealed by the Act of the Thirty-first Legislature amending article 402, this last Act being passed at a date subsequent to the passage of the law in question. Article 402, as amended by the Thirty-first Legislature, makes it a penitentiary offense to sell whisky in local option territory. We hold that the carrying on of the business or pursuing the occupation of selling whisky is a different offense from the sale of whisky, and that the subsequent Act of the Legislature punishing sales does not repeal this Act. The law does not favor repeals by implication. As stated by our Supreme Court in the case of Cain v. State, 20 Texas, 355: "The rule is that in the construction of Acts of the same session, the whole must be taken and construed as one Act and to make a later provision repeal a former there must be an express repeal or an irreconcilable repugnancy between them." See Joliff v. State, 53 Texas Crim. Rep., 61.

3. The indictment alleges, after the formal part, "that on or about the 31st day of August, in the year of our Lord nineteen hundred and nine, and before the presentment thereof, with force and arms in the county and State aforesaid, W. I. Fitch, in Justice Precinct No. 5, in the county of McLennan, and State of Texas, without being permitted by law, did then and there unlawfully engage in and pursue the occupation and business of selling intoxicating liquors, after the qualified voters of said justice precinct had determined, at an election held in accordance with the laws of said State, that the sale of intoxicating liquor should be prohibited in said justice precinct, and the Commissioners Court of said county had passed an order to that effect, which order had been duly published in accordance with law, against the peace and dignity of the State." Appellant made a motion to quash

this indictment on the ground that same is too vague and indefinite, and does not charge this defendant with having sold intoxicating liquor in a local option territory, and does not put defendant upon notice of the time when, place where, or persons to whom he is charged to have made sales of intoxicating liquors. It will be noted that section 1 says that if any person shall engage in or pursue the occupation or business of selling intoxicating liquors he shall be punished, etc. Section 2 of the Act provides that if revenue license is posted up in the house where the intoxicating liquors are sold, it shall be prima facie evidence that the person to whom the license is issued is engaged in and pursuing the business and occupation of selling intoxicating liquors within the meaning of this Act. Section 3 provides: "In order to constitute the engaging in or pursuing the occupation or business of selling intoxicating liquors within the meaning of this Act, it shall be necessary for the State to prove in all prosecutions hereunder, that the defendant made at least two sales of intoxicating liquor within three years next preceding the filing of the indictment." Now then, the State can not stop with proving that the defendant had the license to sell, had a place to carry on the business, and had in his possession the property to sell. Ordinarily when this proof is made, it might be said that the party was engaged in the business, yet the law requires that the State shall go one step farther and prove that he has made two sales within three years. Section 3 is, in the nature of things, a limitation upon the State in its proof and regulates the quantum of proof, and we do not think that the pleader is required, in order to make a complete bill of indictment, either to allege that there was at least two sales made, or the names of the parties to whom the sales were made. This, to our minds, is a question of evidence and not pleading. All of the cases cited by counsel in his brief are cases where there were individual sales of whisky under the local option law, and the court held that the names of the parties to whom the sales were made should be set out. We do not think that this conclusion is in opposition to article 440 of the Code of Criminal Procedure, which provides that "Everything should be stated in an indictment which it is necessary to prove, but that which is not necessary to prove need not be stated." The averments of an indictment must be as specific as the language of the statute on which it is founded, and the proof must correspond with the averments. The majority of the court is of opinion that the indictment is sufficient. Judge Davidson, however, does not agree with the conclusion, and is of opinion that in order to make a valid indictment the pleader must set out that at least two sales were made, and must give the names of the parties to whom the sales were made as well as the time of the sales.

4. On the trial of the case the court charged the jury as follows: "You are charged accordingly, that if you believe from the evidence beyond a reasonable doubt that the defendant did as charged in the indictment between the 12th day of July, 1909, and the 31st day of

August, 1909, in Justice Precinct Number Five (5) in the county of McLennan, and State of Texas, either alone or in connection with another or others unlawfully engage in and pursue the occupation or business of selling beer, and if you further believe from the evidence beyond a reasonable doubt that said beer was an intoxicating liquor, then and in that event you will find the defendant guilty as charged in the indictment, and assess his punishment at confinement in the penitentiary for not less than two or more than five years." This charge is incorrect and not the law. The party must not only be engaged in the business and pursuing the occupation of selling, but the State must prove that he has made as many as two sales within the prescribed period, and the failure of the court to direct the jury that before they could convict the defendant the State must prove at least two sales within the prescribed limit, was error, for which the case must be reversed.

5. On the trial of the case the court omitted to define to the jury what was the meaning of pursuing the occupation or business of selling beer. The appellant requested a special charge as follows: "You are charged that before you can convict the defendant in this case you must believe from the evidence beyond a reasonable doubt that the said W. I. Fitch was engaged in the occupation or business of selling intoxicating liquors in a justice precinct in which the sale of intoxicating liquors had been prohibited under the laws of this State without being authorized and permitted to do so by law. In this connection, you are further charged that by the term 'occupation' or 'business,' as used in this statute, is meant the calling, trade, vocation or business which one principally engages in to procure a living or obtain wealth, and before you can convict the defendant in this case you must believe beyond a reasonable doubt that he was pursuing the occupation or business of selling intoxicating liquors in a precinct in which the sale of intoxicating liquors had theretofore been prohibited by the laws of this State, without being authorized so to do by law, and that he was so pursuing said occupation or principal business for the purpose of procuring a living or obtain wealth." Counsel in his brief has cited us to the case of Cohen v. State, 53 Texas Crim. Rep., 422, 110 S. W. Rep., 67, as authority in point in support of the special charge requested. The Cohen case was dealing with a different subject entirely. In that case the defendant was indicted for pursuing the occupation or engaging in the business of keeping or storing spirituous, vinous and intoxicating liquors for others in a territory where the sale of intoxicating liquors had been prohibited by law, and this court held that the definition of business and occupation as given by the court was too restrictive. However, this court did not hold that the proof must show that the business was his principal business. We do not think that the charge requested by appellant in this case should have been given, as the same would make it practically impossible to ever enforce the statute in question, and that it gives to business and

occupation a more enlarged meaning than is contemplated by the Act itself. The words: "Vocation or business which one principally engages in to procure a living or obtain wealth," are not applicable to this kind of case. If this is the law and must apply in cases like the one before us, it would amount to an impossibility to ever convict a party. The statute evidently did not contemplate that such an enlarged meaning should be given to the words business and occupation. It was in the mind of the Legislature, evidently, to reach those cases where a man secretly, covertly and designedly carried on the business of selling whisky when he had opportunity. It did not require that it should be his principal business; it did not require that he should give his whole or the greater part of his time to it, but it was intended to reach cases where a man might plow all day and sell whisky at night that he had previously hid under his hay stack, or that he might engage in his usual avocation during the day and have concealed at some place whisky, and that he followed the business of selling this whisky whenever the opportunity presented itself. In other words, if he had a principal occupation, and yet engaged in the sale of whisky as a side line, and secretly, the law was intended to reach him, and it was not intended to make it exclusive. While the charge requested by appellant, we think, was not the law, it was sufficient to call the attention of the court to the fact that some definition should have been given to the words "engaged in the business or pursuing the occupation of selling whisky." We think that in cases arising under this statute it is not only necessary to make out a case on the part of the State to prove that the defendant kept in his possession whisky for sale, and that he had whisky on hand, but that he must actually make two sales before the offense is complete, and for the reason that the court failed to charge or give to the jury any guide so that they might determine what was the business or occupation within the meaning of the Act, the case will have to be reversed.

6. On the trial of the case it seems that it was shown that in the town of McGregor, which was situated in Precinct No. 5, which had adopted local option, the appellant in this case was the manager of the club that had for its sole object the purpose of procuring beer and having a place where they might drink it; that they rented a room and that any person who desired to join the club would come to the door of entrance and the porter for the club would take his name in and he would be voted on by those in the room at the time, and if he was notified he was elected, he would go in, register his name on the book, pay twenty-five cents as his monthly amount of the rent and that he would drop twenty-five cents in a box, which would entitle him to drink beer that evening, and every time he would come thereafter he was required to drop twenty-five cents in the box before drinking beer. As to how the club originated or was organized the record is silent. As to how the club would get sufficient number of members to vote on the admission of a new member we are not advised.

The proof shows and the appellant testified that he was elected the manager of the club and that it was his duty to get up the money, see that the rent was paid, pay the porter and to make the orders for the beer and pay for it; that he did this during the months of July and August, 1909. There was no testimony that the club was regulated by any written by-laws. The appellant testified further that he was looked to to pay the rent of the hall, or room, where they met during this time; that there was a standing order for beer, which was shipped in kegs, for a keg each day, unless more was ordered specially. He testified the books were balanced up first by one and then another. A great many witnesses were introduced in the trial of the case and the statement of facts is quite voluminous, but the testimony of all the witnesses was very much alike, and the above is about the substance of all the testimony that was offered on the trial of the case, and we feel that we are justified, upon an inspection of the statement of facts, in saying the proof shows that this business was managed, controlled and directed by the appellant. We are further inclined to hold that the same was operated in violation of the local option law, and that the facts are not unlike the case of Feige v. State, 49 Texas Crim. Rep., 513. In the Feige case this court held where, upon a trial for violating the local option law, evidence showed that the money paid in by the club members of an association was paid into the fund and became the property of the said association with which it furnished beer to the members of the club through its manager, and that the money was not sent out of the local option territory to purchase beer for the individual members or groups of members, but that the beer was purchased by the corporation and sold at five cents a glass by the manager to individual members; that the manager became the vendor of the beer and the principal in the transaction, and that the whole plan pursued was a mere subterfuge to cover a sale made in local option territory and this, although the manager was not personally present at the time of the sale. See also Krnavek v. State, 38 Texas Crim. Rep., 44.

For the errors indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

ON REHEARING.

May 4, 1910.

McCORD, Judge.—At a former day of this term of court this case was reversed and remanded. However, in the opinion it was held that the Act of the Thirty-first Legislature making it a penal offense to engage in and pursue the business of unlawfully selling intoxicating liquors in local option territory, even though the particular territory had adopted local option before the passage of said law, was constitutional and would operate in any local option territory without reference to the time the local option may have been adopted. In the original opinion we held that the indictment was valid. Motion was

made to quash the indictment in the court below because it failed to allege and give the names of the parties to whom the sales were made. Appellant has filed a motion for rehearing contending that this court was in error in holding said Act effective in territory that had already adopted local option; and also that the court was in error in holding the bill of indictment to be valid. We adhere to our former holding that the Act is valid and will operate in all local option territory without reference to the time when local option was adopted. We, however, hold that we were in error in holding that the bill of indictment was valid. In order to be a valid bill of indictment, the pleader must not only charge the offender with pursuing and engaging in the business, but must allege to whom, at least, two sales were made within the specified time. In the case of Mizell v. State, this day decided we approved a form of indictment upon which the conviction was had in that case and commend it to the use of the prosecuting officers of the State.

The motion will therefore in part be overruled and will be granted on that ground alleging that the indictment was defective and the case will therefore be reversed and dismissed.

*Reversed and dismissed.*

DAVIDSON, PRESIDING JUDGE.—Opinion is correct holding indictment insufficient. The court ought to have held the case within the rule laid down in Lewis v. State, decided at present term. The principle enunciated in that case is the same as in this case. That case being correct beyond question, should have reversed this case on the proposition the law discussed in this case can not operate in any local option territory until the voters thereof voted on the law and put it into operation subsequent to the enactment of this law. I concur in reversal and dismissal of this prosecution on insufficiency of the indictment, but dissent from the opinion insofar as it does not follow Lewis v. State, and will write further views later.

DAVIDSON, PRESIDING JUDGE (*dissenting*).—When the original opinion was handed down I disagreed for two reasons, first, because of the insufficiency of the indictment, and, second, because the Act of the Thirty-first Legislature under which the prosecution was brought was not and can not be effective in local option territory then existing, nor can it be made operative in that territory until the vote of the people of such territory have declared their will in favor of the local option law subsequent to the passage of the law under discussion. In other words, that the Act of the Legislature under discussion can not become operative in local option localities where the law was then existing. It can only apply where the people have voted upon that law favorably after the passage of the Act. An inspection of the Act in question makes it apparent that it was passed to prohibit the business of *selling* intoxicating liquors only in local option territory. This is manifest from a reading of the first section of the Act, and it

is further manifest that under the first section it is only applicable to local option territory. It can operate in no other portion of the State. Second, it is equally certain that there *must* be a business carried on or an occupation followed of *selling* intoxicating liquors in such local option territory in order to constitute a violation of this Act of the Legislature. It is unnecessary to notice section 2 of the Act as it only relates to matters of evidence. Section 3 provides that in order to constitute engaging in or pursuing the occupation or business of selling intoxicating liquors within the meaning of this Act, it shall be necessary for the State to prove in all prosecutions hereunder that defendant made at least two sales of intoxicating liquors within three years next preceding the filing of the indictment. Under this section it is essential, first, that the business or occupation be carried on or pursued, and second, that the specified number of *sales* shall occur in order to authorize a prosecution. I, therefore, conclude it was and is necessary to allege both of these essential statutory ingredients else the indictment would not charge the offense. It has always been held absolutely essential in charging an offense in this State that the indictment shall contain every statutory ingredient of the offense. This matter was thoroughly adjudicated in Hewitt v. State, 25 Texas, 722, in an opinion by Judge Roberts, and has been the settled rule from that time till the present. The question was again brought under review in Huntsman v. State, 12 Texas Crim. App., 619, under an Act wherein the Legislature sought to prescribe forms, some of which were contrary to the statutory definition of the offense under which the form was prescribed. The doctrine of the Hewitt case was again vigorously asserted and maintained. I do not care to elaborate those matters. I could not add anything to what was said by Judge Roberts in the one case, and Judge Hurt in the other. We also have a statute which requires that everything necessary to be proved must be alleged in the indictment. That means that every phase of the statutory offense as therein prescribed must be alleged in the indictment, as it is necessary to prove all of these matters as prerequisite to a conviction.

Upon a review of the case in motion for rehearing Judge McCord revised his former opinion in this respect, and held the indictment vicious. This view of the question was also taken in Mizell v. State, decided the same day. I, therefore, concur with Judge McCord in holding the indictment vicious. It being necessary to prove that the business of selling was pursued or carried on and that at least *two sales* were made as prerequisite to conviction, it was, therefore, necessary to allege both phases of the statute in the indictment. The fact that the business was carried on and that at least two sales occurred within the specified three years are prerequisite allegations to the validity of the indictment, and it is equally necessary that the names of the purchasers be stated. The reasons for these views are obvious. It has been so held in all cases of violations of the local option law in well considered opinions. This Act is only a penal one prescribing

a punishment for *selling in violation of the local option law.* Dixon v. State, 21 Texas Crim. App., 517; Martin v. State, 31 Texas Crim. Rep., 27; Dreschel v. State, 35 Texas Crim. Rep., 577, 34 S. W. Rep., 932. As this was but another manner of violating the local option law by *selling,* this matter of sale is controlled by the same rule of pleading in regard to sales as if there was but one sale and the allegations in the indictment in regard to this matter are governed by the same rule of pleading. The only difference in the two violations of the law in regard to the fact or act of selling is that under one Act the State is only required to prove one sale, whereas in the other it must prove two. I, therefore, concur with Judge McCord in holding the indictment vicious.

I can not, however, concur with my brethren in their holding that the Act of the Thirty-first Legislature, the one under discussion and under which this prosecution was brought, is effective in local option territory where the law was in existence at the time of the passage of the Act. My view of the law is that in order to put this law into operation there must be another local option election held in the territory, that the Legislature has no authority to put this law into operation in such territory, and that it can only be done by force and effect of a vote of the people of the given territory. To my mind it is clearly beyond legislative power to place in operation any law or punishment in local option territory, but that can only be done by vote of the people. Taken in its real and only intent and purpose, this Act was passed to punish the sale of intoxicating liquors in local option territory. It applies nowhere else in this State and had no other purpose, and it can accomplish no other end. The fact that it was enacted to punish selling in a certain way does in no manner change or modify this clear and inevitable conclusion. This the statute itself makes obvious when it declares there must be at least two sales in the specified time within the local option territory to authorize a prosecution and conviction. It is self-evident from the reading of the statute itself that there can be no possible conviction until there has been at least two sales within three years. This phase of the law can not be construed away. It is one of the essential requisites of the law, one of its principal ingredients, and if that phase of the law is construed away, the statute falls and there is no offense. This statute was evidently enacted in order to enhance the punishment for this peculiar or particular manner of selling intoxicating liquors in a local option territory in violation of the law. This Act must depend for its vitality upon the majority vote of the given territory, for until the local option law is placed in effect by a vote of the people this Act can not become operative in that territory. When that law has been defeated by a vote of the people, this Act, as a matter of necessity, would pass out of existence into "innoxious desuetude" with all other laws dependent upon the vitality or existence of the local option law. In such case

this Act would become nonenforcible, and it would lie dormant until the local option law has again been put into operation by another vote of the people. This Act was not in existence at the time the people voted on the local option law in the territory where this case arose. It has been held in Texas wherever this question has arisen, that the legislative Act prescribing punishment for violations of the local option law can not go into effect in a territory where the law was then in existence without another vote of the people, and that the Legislature itself was powerless to put the law into operation or change the punishment or add a new punishment to be made operative otherwise than by a vote of the people. This proposition and rule was thoroughly adjudicated in Dawson v. State, 25 Texas Crim. App., 670, and has been followed in all subsequent cases down to and including the Lewis case, decided at the present term of this court. I feel perfectly safe and all confidence in being correct in resting my dissent in this case upon the very able and exhaustive opinion in the Lewis case and cited authorities, written by my Brother Ramsey, and feel that I would scarcely be justified in seeking to fortify his reasoning in that case, and that I would be entering upon a doubtful undertaking in attempting so to do. The Lewis case is correct, and the same reasons which apply in that case apply with equal force here. The law construed in the Lewis case only required one sale in the prohibited territory to afford the basis of punishment. Here, under this Act, two sales are required. Both laws operate only by virtue of a majority vote in the specified territory putting local option into existence. The selling of intoxicants is prerequisite under both laws, and the same reason that holds the law inoperative in such territory in the Lewis case should apply with at least equal cogency under the terms of this statute, for the sale in both instances is a sine qua non to the prosecution. The punishment in neither case was voted on by the people and neither should be held operative in the territory until they have so voted. There can be no difference in regard to the vitality of the law or its position with reference to local option territory in one instance that is not equally applicable in the other, and the mere fact that one is an amended statute and the other a new one, would not change this rule. If the Legislature had the authority to make a new statute and put it into operation without being voted upon by the people, it would have the same authority to put into operation the amended statute. One would be as new in the same territory as would the other, for both prescribe a punishment for selling intoxicants that was not in existence at the time the people voted the law. I do not care to further pursue or elaborate this matter. The reasoning in the Lewis case is entirely satisfactory, and what I have said would seem to be unnecessary and a work of supererogation, in view of what was said and held in the Lewis case.

If the Legislature can put into effect the local option law without a vote of the people to be affected thereby, then by the same authority

and reasoning that body can repeal the law without the consent of the same people. This would lead to the destruction and direct subversion of the provisions of article 16, section 20, of the Constitution, as well as the local option law itself. If the Legislature could do this, then that body could take away the reserved rights of the people, as they placed the same in the Constitution, and assume this authority in the face of the plain mandatory provisions of that Constitution and place it where the people did not place it. This would be an usurpation of power on the part of the Legislature.

There is one other phase of the majority opinion that I desire to notice. The majority opinion is written apparently, if not really, upon the theory that this Act was attacked as being unconstitutional. I do not so understand the question presented. The only or main question suggested is that this law could not be put into operation in the local option territory without an endorsement or vote of the people. I do not understand that it is contended that the Legislature did not have authority to pass such a law subject to ratification or endorsement by the people. Much of the majority opinion is devoted to the idea that the law was attacked because of its unconstitutionality. The Ezzell case in the 29 Texas Crim. App., 521, seems to be cited in support of some of the propositions along this line. The Ezzell case was not discussing the question involved here. An inspection of that case will show that the question there involved was that a punishment could be had for an infraction of the law when that infraction occurred while the law was in vogue, but the trial and conviction occurred after the law was repealed by a vote of the people. Under the early decisions it was held this could not be done, but the Legislature to meet this changed the law so that the abrogation of the law in the given territory would not exonerate from punishment a violation of that law committed while it was operative. The local option law had been amended by the Legislature on March 30, 1887, and as amended had been voted into operation by the voters of Wilson County, in December, 1888. The amendment of 1887 provided two matters not theretofore included in said law, first, that the repeal of the law should not exempt from punishment any person who had offended against the provisions of that law while it was in force, and, second, that the purchasers of intoxicants in local option territory should not be accomplices. See White's Annotated Penal Code, article 407. Neither of the above provisions were in existence prior to the Act of March 30, 1887. The law as amended was adopted by the people in Wilson County subsequent to the amendment, and, therefore, became the governing rule of action until repealed by the same vote. This repeal by a vote in that county occurred in March, 1891. The adoption in 1888 of the amendment of 1887 by the people in that county put the amended law into operation. It was not put into operation nor sought to have been so done by the Act of the Legislature. It was, therefore, held in the Ezzell case that the repeal of the law in 1891 by a vote of the

people of that county did not exempt Ezzell from punishment for acts committed by him while the law was in effect. Had the facts in the case under consideration shown that the people had voted on local option since the enactment of the statute by the Thirty-first Legislature, the Ezzell case might be in point had the question been in that case decided. The Legislature has the authority, and it is the duty of that body to enact suitable and sufficient laws to carry out the purposes of article 16, section 20, of the Constitution, but that body can not put such penal laws into operation. This was reserved by the people for their own consideration at the polls, and it takes a vote of the people of the designated territories to give effect to this law. In the Ezzell case the people had so done, but in the case under consideration this had not occurred. The Ezzell case is not, therefore, authority for the position of the majority opinion in this case on that question. The constitutionality of the Act in question is vitally different from the question under discussion and consideration. If an Act be unconstitutional, it is void and beyond legislative authority to enact, and, therefore, could not become operative either by legislative enactment or by a vote of the people. If the Act is within constitutional authority, then the question is one of putting that Act into operation in the designated territory. The latter question is the one involved in this case and not the former. It has always been held that the only way to put into operation local option laws in Texas is by a direct vote of the people to be affected by the operation of that law. They alone can put it into effect, and they alone can repeal its operation. All the cases can be cited in support of this proposition, but it is deemed unnecessary to collate them. The question here involved did not arise and could not have arisen under the facts of the Ezzell case. The question was not suggested in that case either in the record or in the opinion, and was not referred to or discussed. The question at issue here had theretofore arisen in the Dawson case, supra, and had been settled adversely to the majority opinion. The decision in the Dawson case, of course, was known to the profession long prior to the decision in the Ezzell case. The facts in the Ezzell case excluded it from the operation of the rule laid down in the Dawson case. When the law went into operation in Wilson County in 1888, the amendment of 1887 was at the same time adopted and put into operation, but this was done by a direct vote of the voters of that county. These voters had that authority, but the Legislature did not.

The Schwulst case in the 52 Texas Crim. Rep., 426, is also cited to sustain the proposition that the blind tiger Act was constitutional. If this law had been attacked as being unconstitutional, the Schwulst case might have been applicable. The question here at issue did not arise in the Schwulst case, nor did it arise in the prior case discussed in the opinion of Segars v. State, 35 Texas Crim. Rep., 45. An inspection of the law and the Segars case will demonstrate that it could not have arisen. The blind tiger Act was passed in 1887. The Segars

case was not decided until May, 1895. The statement of facts in the original record in the Segars case shows the law was put into operation in Brown County, where the conviction occurred, in 1893, and that appellant was charged with a violation of the law as having been committed on the 6th of September, 1894. Therefore, the question here suggested for revision could not have arisen, because the blind tiger Act was voted into existence by virtue of the election held in 1893, years after the blind tiger law was enacted.

I deem it unnecessary to discuss the question of constitutional law in regard to this matter further than as stated, that is, under article 16, section 20, of the Constitution, the Legislature is powerless to create a penalty and put it into operation in a local option territory; that the law must be made operative only by a vote of the people, and that no punishment or penal law can be enforced for violating the local option law in that territory until it has been voted upon by the people of the territory. I, therefore, respectfully dissent from the majority opinion wherein it is held that the Legislature had the authority to authorize the punishment for engaging in the sale of intoxicating liquors in local option territory by virtue of the Act under discussion. The Legislature could not do this.

RAMSEY, JUDGE.—Ordinarily, I should not take the time to prepare an opinion in this case. In view, however, of the importance of the matter and the dissenting opinion of Judge Davidson, which I have seen, and in view of my inability to agree that the indictment in the case is invalid, I have thought it advisable, if not necessary, to make a statement of my views touching the matters involved in the case.

1. The dissenting opinion of Judge Davidson is based largely, if not wholly, on the proposition that the conclusion of the court sustaining the validity of the Act in question rests largely, if not wholly, on the proposition that this conclusion is opposed to and not in harmony with the opinion of the court in the recent case of Lewis v. State. I had the honor to write the opinion of the court in the Lewis case, and whatever other merits it may have, a careful reader will be willing to confess that it evidences a careful examination of the authorities, and that it follows the decisions heretofore rendered by this court. I recognize that the opinion of Judge Davidson on this or any other question is entitled to great deference and respect. Since, however, the opinion in this case and the Lewis case were delivered on the same day, and since I wrote the opinion in the Lewis case, and have agreed and do now agree to the opinion sustaining the law in this case, I shall endeavor briefly to show not only that there is no lack of harmony between the two cases, but that the distinction between them is so broad as to leave ample room to drive a coach and four between the opinions without injury to either. There is, in my opinion, not only no lack of harmony or contradiction between the two opinions, but

the reasoning and philosophy that sustains one sustains the other. It is not my purpose to go into the matter at length. The opinion of Judge McCord is so well reasoned and so well fortified by authority as to make it unnecessary for me to do so. That the opinion on the main question is correct seems to me to be clear in reason. Besides, it is directly supported by all the authorities in this court for almost, if not quite, a quarter of a century down to and including the recent case of Schwulst v. State, 52 Texas Crim. Rep., 426, in which the opinion was delivered by Judge Davidson on January 22, 1908, and concurred in by both Judge Brooks and myself. If I am correct in this conclusion, I stand, therefore, today where I have always stood, and where as I understand this court has always stood in upholding the law, and, therefore, take this opportunity to go on record as assuming my full share of the responsibility for the opinion of the court upholding the validity of this law both in word and in spirit.

That it is within the power of the Legislature to provide ample remedies for evils and abuses growing out of the sale of intoxicating liquors in local option precincts, beyond and aside from the punishment assessed for such sales, is no longer an open question in this court. It was so held in the case of Schwulst v. State, supra, where Judge Davidson held that though the law imposed a higher penalty for those operating a blind tiger than for an ordinary sale, this did not render the statute invalid. If that was the law then, it is certainly the law now. Under the local option law each sale is a different offense, and the person selling may be punished as often as he makes different and several sales. Notwithstanding this statute, we have upheld the validity of a statute which imposed a tax upon liquor dealers in local option precincts. This was first ruled in the case of Snearley v. State, 40 Texas Crim. Rep., 507, in which Judge Davidson dissented, but this has since become the settled rule of this court, and is reasserted in the case of Cunningham v. State, 52 Texas Crim. Rep., 522, 108 S. W. Rep., 678, and in the more recent case of Snead v. State, 55 Texas Crim. Rep., 583, 117 S. W. Rep., 983, where all the authorities are carefully reviewed, and the proposition is thoroughly well settled without dissent or difference between the members of this court. The object of this statute was clearly in aid of the enforcement of the local option law, and for the further protection of society, and to rid the commonwealth of a set of lawbreakers who are doing more to outrage decency and corrupt the youth of our land than any element in it. Such offender was usually known under the guise of keeper of a frosty joint or a traveling bootlegger. He could, of course, be punished for individual sales, but there was an evil back of and beyond the evil wrought in the mere act and fact of the sale. He was an unfair competitor of the man engaged in the sale of liquor under the restraints and safeguards of law. He was doing business in defiance of law. The youth received no protection at his hands as the law provides in case of the saloon keeper. He gave no bond to keep an orderly

house. He might as he did ply his business in all hours of the day. His place became a refuge for the depraved, a breeding ground of crime, a plague spot, the refuge and shelter of indiscriminate outlawry, and in every way worse and more destructive than the "earthquake's shock or the ocean's storm." It was this man as it was a man of like mold in the blind tiger case that the law sought to reach. It sought not so much to punish him for the sale as to prevent the sale, break up his place of business and drive him out of business. It sought not so much to punish him as to protect society by the imposition of the felony punishment for his continued existence. The record shows that this law was voted for and approved quite generally by members both of the House and Senate who felt and thought that a wise public policy should not prevent in communities desiring it, the sale of liquor under the sanction and safeguards of the law. Why should it be deemed a thing incredible among us that for the protection both of those who think liquor ought not to be sold at all, and of those who think it may wisely be sold under proper safeguards, that the mandate of the law should be issued against the man who is the common enemy of both. The decision in the Lewis case is rested on the ground, first, that the Legislature has no power to attach a different penalty for the *sale* of intoxicating liquors where such sale is prohibited prior to the passage of the Act, and, further, that such was not the legislative intent. In this case the man is not punished for making the sales. He is punished for engaging in the business, which implies an open and flagrant defiance of law and which embraces evils not included in the mere fact and act of a single sale. The provision in reference to two sales is as a matter of evidence that he is engaged in the business. If he were punished for the sales as such he must be punished for each sale and in two separate cases. It is easily conceivable that one might make a dozen sales in three years at widely separated times and under different conditions, and yet not be in the business. Two sales do not fix the fact that he is engaged in the business, but with a view of throwing some limitation around the law and as a matter of proof, it is required that at least two sales shall be shown. On principle this identical question was before us in the case of Joliff v. State, 53 Texas Crim. Rep., 61. The Act there construed fixed a heavy penalty against anyone engaging in the sale of intoxicating liquors who had not obtained a license so to do. It was, of course, true in the Joliff case that he would have been responsible for each sale, and could have been prosecuted for such sales under the law, but while amenable to this law, we upheld the law in the Joliff case as we have done repeatedly since that day, and have held on the same broad principle of right and reason that the lawbreaker who, in defiance of law, conducted a business under such conditions as to become a public stench in the nostrils of all good people might be proceeded against under the law fixing penalties which would deter him from engaging in the business. If, therefore, it was lawful to fix a different

penalty for a man engaged in the sale of intoxicating liquors in pro-
hibition territory, on what principle of law or reason could it be held
that the Legislature could not, as they have done, make it a penitentiary
offense for one to engage in such business whether within the shelter
of a house or as a bootlegger at night? There is no reason, as far as
I can see. In the Joliff case, he could have been prosecuted for every
sale he made, and yet this was held to be no answer when the State
proceeded against him for keeping a disorderly house, and why? For
the reason that when he set up a shop in defiance of law and was
conducting a business without the safeguards and without that protec-
tion the lawmakers have thrown around the business, it was easily seen
be would attract to himself every undesirable element of society, fur-
nish them an abiding place, that it would promote gambling, disorders,
outbreaks, drunkenness, vice, theft, burglary, murder, and so with a
view of aiding in the enforcement of the local option law, not so much.
to punish him for the sale as to make the sale impossible and the
business impossible, the lawmakers in this case have fixed a penalty that
says to the man who seeks this as a business, as a trade, as a profession,
as a livelihood, that when he engages in it, that he does so with knowl-
edge of the fact that he may be sent to the penitentiary. There is,
therefore, no lack of harmony between the opinion at which we arrived
in this case and the Lewis case. I would be the last man to uphold a
law which might appeal to me as being intrinsically meritorious if
in reason and under the law it could not be and ought not to be sus-
tained. I said in the Lewis case, and I say now, that it is not so much
our office and purpose to declare what the law ought to be as it is to
declare what the law is, but I can never get my consent to be tied
down by any artificial or superficial reasons that are supposed to be
wiser than the truth, but with the law I take my stand now and
always. (2.) I think the court was clearly wrong in the conclusion
at which Judge McCord ultimately arrived in holding the indictment
in this case defective, and concedes more than ought to be conceded.
I think in reason that this concession of his lends some aid to and
tends to support Judge Davidson's position that there is a lack of
harmony between this case and the Lewis case. If I am right in my
opinion on the other question, then I am right on the proposition
that it is not essential to set out in detail the dates of the several sales
and the names of the several purchasers. This provision with refer-
ence to two sales in three years is not a descriptive part of the offense.
It is a different section, and, therefore, is not required to be recognized
or treated in the indictment at all. We held in the recent case of
Newman v. State, that it was not essential to negative exceptions in
a statute which were not descriptive of the offense. This part of the
statute requiring two sales to be shown is simply a matter of evi-
dence in the same sense that the provision of the law touching the
possession of internal revenue license raises the presumption that the
person having same was engaged in the business of selling intoxicating

liquors. Nobody would contend that the court would be authorized as a matter of law to instruct the jury that when two sales were shown, that this was legal and conclusive evidence that the person was engaged in the business. The mistake of my brethren from my point of view on this question is in overlooking the fact that in these prosecutions the defendant is not charged with making the sales, but with conducting a business in violation of law. The decision on the sufficiency of the indictment ought not to stand because it throws unnecessary burdens on the State. I, therefore, note my disagreement and dissent from the proposition that the indictment in the case is invalid, and affirm my entire concurrence in the majority opinion which holds the law valid and constitutional.