### JOHN JOSEPH v. THE STATE.

No. 196.   Decided December 1, 1909.

Rehearing denied April 13, 1910.

**1.—Murder—Evidence—Credibility of Witness.**

Where, upon trial for murder, the defendant was permitted to interrogate a State's witness fully as to how much intoxicating liquor he had drunk on the night preceding the homicide, and on the day of the same, and as to whether he had slept any on said night preceding the homicide, to show his mental condition, there was no error in sustaining an objection to a question by the defendant as to what places he went to.

**2.—Same—Evidence—Mental Condition of Defendant.**

Upon trial for murder there was no error in excluding testimony with reference to a spell of sickness which defendant had some time before the trial, there being nothing to show that defendant's mind was not in a condition to tell what he knew about the facts of the case.

**3.—Same—Evidence—Immaterial Testimony.**

Where, upon trial for murder, the rejected testimony with reference to defendant's state of health threw no light on the guilt or innocence of defendant, there was no error.

**4.—Same—Bill of Exceptions—Practice on Appeal.**

Upon appeal from a conviction of murder, where the bill of exceptions objected in a general way to the charge of the court, the same was insufficient to be considered.

**5.—Same—Charge of Court—Aggravated Assault—Deadly Weapon.**

Where, upon trial for murder, the character of the wound inflicted, the deadly weapon and all the evidence in the case excluded the issue of aggravated assault, there was no error in the court's failure to charge thereon.

**6.—Same—Jury and Jury Law—Impartial Juror.**

Where, upon trial for murder, the defendant objected to a certain juror after the trial on the ground that he was partial, and it appeared that the juror had simply expressed himself, before he was taken on the jury, that he knew too much about the case to be taken on the jury, and there was nothing to indicate any prejudice on his part, there was no error.

**7.—Same—Sufficiency of the Evidence.**

Where, upon appeal from a conviction of murder in the second degree, it appeared from the record that the evidence sustained the conviction, there was no error.

**8.—Same—Charge of Court—Manslaughter—Practice on Appeal.**

Where, upon appeal from a conviction of murder in the second degree, there appeared no exception to the court's charge on manslaughter in the motion for new trial, or otherwise, there was no error.

Appeal from the District Court of Williamson.   Tried below before the Hon. Chas. A. Wilcox.

Appeal from a conviction of murder in the second degree; penalty, five years' imprisonment in the penitentiary.

The opinion states the case.

*J. F. Taulbee* and *T. J. Lawhon,* for appellant.—On question of appellant's exception to the court's charge:   Hudson v. State, 44 Texas

Crim. Rep., 251, 70 S. W. Rep., 764; Mercer v. State, 52 Texas Crim. Rep., 321, 106 S. W. Rep., 365.

*John A. Mobley,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of murder in the second degree and his punishment assessed at five years confinement in the State penitentiary.

The evidence in this case, in substance, shows that appellant, a boy about sixteen years old, and his companion, Hiram Elliott, were at a restaurant Christmas night eating some chile when the deceased, Lucien Whitehead, walked up to Hiram Elliott, caught him in the collar and used some insulting language to him. Thereupon the restaurant keeper, Potts, told the parties to get out of his house if they proposed to have a row; they went outdoors out on the sidewalk in front of the restaurant and finally behind the house and had a talk, and Hiram Elliott left and went home. The evidence shows that appellant accompanied Hiram Elliott out at the time the deceased and Elliott left the restaurant, stating that deceased was too big to fight Elliott. After Elliott had left, as stated above, deceased was standing near appellant some thirty or forty minutes after the first trouble, when appellant remarked that deceased could not put his hand in his collar like he had placed his hand in the collar of Elliott, telling various parties that he would cut his, deceased's, guts out if he did. The latter statement, however, the record is not clear as to whether deceased heard or not. The deceased did place his hand in appellant's collar upon being challenged to do so and appellant stabbed him in the side, from which wound deceased died the next day. There are various statements made by appellant to deceased indicative of anger and resentment at deceased's conduct towards his friend Elliott prior to the time deceased placed his hand in appellant's collar. All parties seemed to have been drinking and deceased was quite drunk. Deceased was a man weighing about 160 or 170 pounds and appellant about 140 pounds.

Bill of exceptions No. 1 shows that while Bob Gotcher, a witness for the State, was being cross-examined by appellant he was asked the following question: "Where did you go when you first went to Austin? Tell all the places you were at while you were in Austin." The State objected on the ground that same was immaterial, and the court sustained the objection and appellant excepted on the ground that he expected to show by this witness that he, the witness, was in saloons and dives and bawdy houses all of the night before the matters that he was testifying about occurred, for the purpose of showing his drunken, tired and exhausted condition at the time he was testifying about on the day of the homicide. The bill is approved with this qualification: "The defendant was permitted to interrogate the witness fully as to how much intoxicating liquors he had drunk on

the night preceding the homicide, and on the day of the homicide, and as to whether he had slept any on the said night preceding the homicide." This, we take it, would be all that would be necessary to go to show the physical and mental condition of the witness at the time, and beyond this we can not see what effect it would have for the jury to know what places or houses he had visited.

Bill No. 2 shows that while appellant's mother was on the stand appellant's counsel propounded to her the following question: "Between the time of the former trial of this defendant, on the 8th of February, and this date, has there or not been anything else the matter with your boy, this defendant, in the shape of sickness?" The State objected on the ground that same was immaterial. Appellant says he expected to prove that during the month of March the defendant was for a period of three weeks confined to his bed with a severe case of pneumonia; that this testimony was offered for the purpose of explaining the defendant's present physical condition, and to explain why he could not go upon the witness stand and testify in his own defense at this time upon this trial and that he had not fully recovered from his last spell of pneumonia. There is nothing in the bill from which such a conclusion, as appellant insists upon, could be legitimately drawn, that is to say, there is nothing in the bill of exceptions that shows that appellant's mind was not in a sufficient state to tell what he knew about the facts of this case. The fact that he had previously had one or more cases of pneumonia would not affect his mind, nor would the fact that he was weak from said sickness prevent him from telling what he knew about it. The testimony was clearly inadmissible and the court did not err in refusing it.

Bill No. 3 shows that appellant attempted to prove by Dr. O. Atkinson and Dr. Simmons that during the month of March, to wit: about the 13th of March, 1909, they had attended the defendant, John Joseph, at his home in Liberty Hill, Texas, and that at that time defendant was suffering from a severe attack of pneumonia. This testimony was not admissible; it throws no light upon this trouble nor does it indicate in any way the guilt or innocence of the appellant of the charge here being tried.

In appellant's motion for a new trial we find the following grounds, among others, which we will proceed to group, set up in said motion for new trial: 1. Because the court erred in charging the jury on murder in the first degree. 2. Because the court erred in his charge to the jury on the law applicable to murder in the second degree. 3. Because the court erred in his charge to the jury on the law of manslaughter. 4. Because the court erred in his charge to the jury on the question of a provocation or a provoking of a difficulty, and the abandonment of the same. 5. Because the court erred in his charge to the jury on the law of self-defense taken in connection and to be considered by the jury with the law of murder of the first and of

the second degree and of manslaughter. All of these exceptions are too general to be considered by this court, but we will say in passing that we have very carefully read the charge of the court and find same an admirable presentation of the law upon all these questions.

The 6th ground of the motion complains that the court erred in failing to charge on aggravated assault. We do not think the evidence in this case called for such charge. The character of the wound inflicted by appellant on deceased, his prostrated condition immediately following the stabbing, the depth of the wound and all clearly shows that the weapon was a deadly one and there was no issue of aggravated assault in the case.

Appellant further insists that the court erred in not granting him a new trial because he did not have an impartial jury; that the juror Brizendine, who served in this case, had previously made up his mind as to the guilt of this defendant and had so expressed himself before the trial and on the day he was taken as a juror in this case. The affidavits presenting this matter show that all the juror said was that, when he left Mr. Booty's store to go to the courthouse, he knew he would be back soon; that he knew too much about this thing to be taken on the jury. He said nothing to indicate any prejudice one way or another.

Appellant further insists that the evidence in this case does not warrant the conviction. We can not agree to this proposition, but must say that the evidence shows, without collating same in detail, that appellant sought the difficulty, provoked it in every way it could be done, knowing the drunken condition of the deceased and finally bantered him to do towards him, appellant, what deceased had done towards his companion, Elliott, and the moment he did appellant stabbed him to death, showing clearly that he was simply seeking a pretext for doing what his previous malice had armed him to do.

Appellant in his brief excepts to the 21st paragraph of the court's charge, which is as follows: "You are further instructed that if you believe from the evidence beyond a reasonable doubt that the defendant cut or stabbed deceased, as alleged, and that the defendant and deceased had an altercation or difficulty prior to the time when deceased lost his life, and if you believe that in such prior difficulty, if any, the defendant's mind had been, from some adequate cause, aroused to a sudden passion such as to render him incapable of cool reflection, and if you believe that at the time deceased was cut or stabbed, if he was, that defendant's mind had not cooled, and that he was for the time incapable of cool reflection, and if you believe beyond a reasonable doubt that in such condition of mind the defendant cut or stabbed and thereby killed deceased, then if you find him guilty, it could be of no offense higher than manslaughter." We find no exception or complaint in the motion for new trial to this paragraph and same can not be considered. In the absence of a bill of exceptions, or a

ground in the motion for new trial urging defects in a charge, this court is not authorized to reverse a case.

We find no error in this record and the judgment is affirmed.

*Affirmed.*

[Rehearing denied April 13, 1910.—Reporter.]