## BILL DICKSON v. THE STATE.

### No. 1719. Decided April 17, 1912.

**1.—Selling Intoxicating Liquors—Pursuing Occupation—Local Option—Constitutional Law.**

The law making it a penal offense to pursue the business and occupation of selling intoxicating liquors in local option territory is constitutional, and applies to territory where prohibition had theretofore been adopted. Following Fitch v. State, 58 Texas Crim. Rep., 366, and other cases.

**2.—Same—Bills of Exception—Transcript.**

Where the bills of exception are not in the record, they can not be considered on appeal.

**3.—Same—Evidence—Other Transactions.**

Where a State's witness had testified to purchasing intoxicating liquors at different times from the defendant, and the defendant contended that witness had ordered the liquor himself and that one shipment of nine quarts of liquor had been received by the witness in another name, and the party under this name testified that defendant's brother ordered the same in said name, there was no error in permitting the State to show that this liquor was not in fact that which defendant claimed it was.

**4.—Same—Evidence—Other Transactions.**

Where defendant accepted a bill of exceptions as qualified by the court in which it appeared that the witness and the defendant had liquor shipped to them at different times and divided it between them, there was no error in admitting on cross-examination testimony that said witness had ordered a great deal of liquor in the name of defendant's firm.

#### 5.—Same—Evidence—Contradicting Witness.

It is well settled that where the opposing party seeks to contradict a witness on a material point by proving contradictory statements, the witness can be suported by showing that he made the same statement as that testified to by him on the trial, at the time or shortly after the transaction. Following Campbell v. State, 61 Texas Crim. Rep., 504, and other cases.

#### 6.—Same—Evidence—General Reputation.

Where the State's witnesses were bitterly assailed by the defendant on cross-examination and their testimony was also sought to be impeached, there was no error in permitting the State to show that the general reputation for truth and veracity of said witnesses was good.

#### 7.—Same—Rule Stated—General Reputation.

There is no better evidence of a man's good reputation than that he had lived in a given community for a number of years and that it was never brought in question; there was, therefore, no error in admitting testimony that the witness had never heard anyone talk about the reputation of the witnesses whose testimony was assailed. Following Tyler v. State, 46 Texas Crim. Rep., 10, and other cases.

#### 8.—Same—Evidence—Practice in District Court.

Upon trial of pursuing the occupation of selling intoxicating liquors in local option territory, there was no error in admitting testimony as to the intoxicating qualities of the alleged liquor before the testimony of the case was closed; this was a matter in the discretion of the court. Article 698, Code Criminal Procedure.

#### 9.—Same—Evidence—Other Sales—System.

Where the testimony as to other sales which defendant had denied was not admitted for the purpose of impeaching defendant, such sales having taken place prior to the date alleged in the indictment, but was introduced to show the character of business and occupation defendant pursued in selling intoxicating liquors in local option territory, there was no error, nor were such other sales too remote, it appearing that no change in defendant's system of selling liquor had taken place for three or four years prior to the date alleged in the indictment.

#### 10.—Same—Charge of Court—Definition of Occupation.

Where, upon trial of pursing the occupation of selling intoxicating liquors in local option territory, the court's charge on the definition of the term, "occupation and business," was in accordance with precedent, there was no error. Following Fitch v. State, 58 Texas Crim. Rep., 366, and other cases.

#### 11.—Same—Charge of Court—Two Sales—Occupation.

Where, upon trial of selling intoxicating liquors as an occupation in local option territory, the court's charge required the jury to find that not only two sales must have been made by the defendant, but that he must have pursued the occupation or business of selling, etc., there was no error. Following Clark v. State, 61 Texas Crim. Rep., 597, and other cases.

#### 12.—Same—Charge of Court—Agency.

Where, upon trial of pursuing the occupation of selling intoxicating liquors in local option territory, the defendant had testified that he was engaged in ordering whisky frequently for others, there was no error in the court's charge in presenting the theory of defense that if defendant acted as the agent of the purchaser and not as the agent of the seller, he would not be guilty.

#### 13.—Same—Practice on Appeal.

Where the objections to the court's charge are of a general character, and do not point out the alleged errors, they can not be considered on appeal. Following Ryan v. State, 64 Texas Crim. Rep., 628.

**14.—Same—Charge of Court—Profit.**

Where the defendant admitted that he ordered whisky for his customers and charged it to their account to be paid for when the remainder of the account was paid, the same was a sale in law, and there was no error in the court's charge that it was not necessary that the party should make a profit in his business in order to be guilty of pursuing the occupation of selling intoxicating liquors. Following Coleman v. State, 53 Texas Crim. Rep., 578, and other cases.

Appeal from the District Court of Hopkins. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of pursuing the occupation of selling intoxicating liquors in local option territory: penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*C. E. Sheppard* and *D. Thornton,* for appellant.—The impeachment of a material witness on an immaterial matter is reversible error, because, by discrediting the witness and showing the jury that upon an immaterial issue he had testified falsely, it is calculated to make the jury believe that he may have testified falsely in regard to other matters which were material. Price v. State, 43 S. W. Rep., 96; Collins v. State, 66 S. W. Rep., 840; Jenkins v. State, 75 S. W. Rep., 312; Baldrige v. State, 74 S. W. Rep., 916; Holland v. State, 60 Texas Crim. Rep., 117, 131 S. W. Rep., 563; Jennings v. State, 60 Texas Crim. Rep., 421, 132 S. W. Rep., 473, and Miller v. State, 47 Texas Crim. Rep., 329, 83 S. W. Rep., 393.

Mere accusations against, or evidence of particular acts of misconduct, are not admissible to effect the credibility of a witness. A witness can only be impeached as to other offenses by showing that he has legally been charged with a felony, or a misdemeanor imputing moral turpitude. Ware v. State, 38 S. W. Rep., 198; Fields v. State, 46 S. W. Rep., 814; Barkman v. State, 52 S. W. Rep., 73; Flornoy v. State, 59 S. W. Rep., 902; Reed v. State, 61 S. W. Rep., 925; Wade v. State, 48 Texas Crim. Rep., 512, 90 S. W. Rep., 503; Sheppard v. State, 56 Texas Crim. Rep., 604, 120 S. W. Rep., 446; Goad v. State, 52 Texas Crim. Rep., 444, 108 S. W. Rep., 680; Hightower v. State, 53 Texas Crim. Rep., 486, 110 S. W. Rep., 750; Holland v. State, 60 Texas Crim. Rep., 117, 131 S. W. Rep., 563, and Knight v. State, 55 Texas Crim. Rep., 243, 116 S. W. Rep., 56.

If a defendant is questioned about matters upon which he has not been indicted, and for which he can not be indicted, the State must accept the answer to such questions, and will not be permitted to impeach him. Pinckard v. State, 62 Texas Crim. Rep., 602, 138 S. W. Rep., 601; Campbell v. State, 61 Texas Crim. Rep., 504, 138 S. W. Rep., 607; Brittain v. State, 37 S. W. Rep., 758, and Wright v. State, 63 Texas Crim. Rep., 429, 140 S. W. Rep., 1105.

The violation of the local option law where it is not a felony does not impute moral turpitude. Stewart v. State, 38 S. W. Rep., 1143;

Meriweather v. State, 55 Texas Crim. Rep., 438, 116 S. W. Rep., 1148; Hightower v. State, 60 Texas Crim. Rep., 109, 131 S. W. Rep., 324.

On question of refusing requested charges on the definition of occupation and business: Fitch v. State, 58 Texas Crim. Rep., 366, 127 S. W. Rep., 1040; Clark v. State, 61 Texas Crim. Rep., 597, 136 S. W. Rep., 260; Hernandez v. State, 64 Texas Crim. Rep., 73, 141 S. W. Rep., 268; Dozier v. State, 61 Texas Crim. Rep., 258, 137 S. W. Rep., 601; Campbell v. State, 61 Texas Crim. Rep., 504, 138 S. W. Rep., 679; Mizell v. State, 59 Texas Crim. Rep., 226, 128 S. W. Rep., 125; Smythe Co. v. Ft. Worth Glass and Sand Co., 142 S. W. Rep., 1159.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—In this case the appellant was prosecuted for pursuing the business and occupation of selling intoxicating liquors in a county where the sale had been prohibited by law, and when tried was convicted and sentenced to the penitentiary for two years.

Appellant by bills of exceptions and in the motion for new trial raises many of the questions decided by this court in the case of Fitch v. The State, 58 Texas Crim. Rep., 366, 127 S. W. Rep., 1040, when the court was composed of Judges Davidson, Ramsey and McCord. The constitutionality of the Act, and whether or not it, by its terms, applied to territory where prohibition had theretofore been adopted is so thoroughly and ably discussed, we do not deem it necessary nor proper to again enter into a discussion of these questions, but simply state we adhere to the opinion of the majority of the court in that case. The court, since the rendition of the opinion in the Fitch case, has frequently passed on the same questions. (Clark v. The State, 61 Texas Crim. Rep., 597, 136 S. W. Rep., 260; Dozier v. State, 62 Texas Crim. Rep., 258, 137 S. W. Rep., 679; Slack v. State, 61 Texas Crim. Rep., 372, 136 S. W., 1073, and other cases referred to in those opinions.) The court did not err in overruling the motion to quash the indictment, nor the plea to the jurisdiction of the District Court of Hopkins County.

Bills of exception Nos. 3, 4 and 5 are not in the record; therefore, we can not consider or pass on the grounds in the motion for new trial based thereon.

In the next bill of exceptions appellant complains that when S. L. Dickson, a witness for the defendant, was placed on the stand, on cross-examination the State was permitted to prove by him: "That he is the brother of the defendant and lived at Brashear in Hopkins County during the last year; that he drinks considerable whisky, on an average of about six quarts a month which costs him about $4 per gallon; that he thinks he went to a fellow by the name of John Jacobs in May of this year and told him that he wanted to order some whisky

in his home, that he had ordered so much in his own name that he was ashamed to order any more in his name and wanted to order in Jacob's name; that he thinks he did make an order about that time in the name of John Jacobs & Co. of nine quarts and that it came to Brashear and that he, witness, got it out of the express office, but does not remember what he did with it; that defendant had no interest in this order; that about a week ago, about a week before the trial, he ordered some whisky in the name of S. L. Dickson & Co., that a friend of his at Brashear was interested with him in the order, but that the defendant had no interest in it. That defendant was not present when he was talking with Jacobs about using his name in making the order and was not present when the liquor was received." The objections urged was that such testimony was hearsay and prejudicial to the rights of the defendant, immaterial, irrelevant and not in support of any issue in the case. The court in approving the bill says: "The testimony of this witness in regard to ordering nine quarts of whisky in the name of John Jacobs was admitted for the following reason—Jacobs was a State's witness and had testified to purchasing liquors several times during the year 1911 from the defendant. Defendant's theory was that Jacobs did not buy from the defendant but that he had ordered the liquor himself. He introduced the express agent and showed by his books that one shipment of nine quarts of liquor had been received by the witness or in the name of the witness, Jacobs. Jacobs testified to the shipment but claimed that S. L. Dickson, brother of defendant, ordered the same in his, witness' name. This evidence of this witness, S. L. Dickson, was admitted in order to explain said shipment and to show that it was not in fact the liquor of the witness Jacobs.

"As to the second ground of complaint in this bill the following are the facts: This witness, S. L. Dickson, was a brother of the defendant. He was introduced by the defendant. On cross-examination by the State he admitted that he had ordered a great deal of liquor in the name of S. L. Dickson & Co.; that in all such orders his brother, the defendant, was the company. This witness admitted that he and his brother were partners in the whisky ordering business. This testimony was admitted for the purpose of showing the amount of liquor ordered and received by the defendant. After admitting that he and defendant were partners the district attorney asked the defendant if they divided their whisky when it came and what they did with it. He answered that they did and that he drank his." When a defendant accepts a bill as qualified and files it, this court has held that it estops the defendant from further complaint and he is bound by the qualification. (Blain v. The State, 34 Texas Crim. Rep., 448; Hardy v. The State, 31 Texas Crim. Rep., 289; Levine v. The State, 35 Texas Crim. Rep., 647; Brown v. The State, 32 Texas Crim. Rep., 119; Boyett v. The State, 2 Texas Crim. App., 93.) As qualified by the court the

bill presents no error. The testimony of John Jacobs on this point was admissible for the same reasons.

It is also complained that the witness Jno. T. Hyde was permitted to testify to a statement made to him by the State's witness, R. G. Timbs. The court, in approving the bill, states: "The witness, Timbs, testified on the trial of this case that he bought a quart of liquor from defendant. He denied that he had requested defendant to order him this quart. Mr. Sheppard, one of defendant's attorneys, testified for defendant that he had a conversation with this witness a few days after the witness had made affidavits against defendant, in which conversation the witness, Timbs, stated to him that he had not bought this particular quart of liquor from defendant, but that he had requested defendant to order it for him. The witness, Timbs, denied this conversation. After the witness, Sheppard, had testified the witness, Hyde, was introduced by the State in rebuttal, who testified that Timbs had made the statement to him complained of in the bill which statements were in substance the same as testified to by the witness, Timbs, on the trial. My ruling in this case was based upon the rule laid down in the case of Campbell v. State, 61 Texas Crim. Rep., 504, 138 S. W. Rep., 607." It is a well established rule of law in this State that where the opposing party seeks to contradict a witness on a material point by proving contradictory statements, the witness can be supported by showing he made the same statement as that testified to by him on the trial at the time of or shortly after the transaction. In section 874 Branch's Crim. Law, the rule is laid down that where a State's witness is attempted to be impeached by showing that he made statements with reference to the transaction out of court different and contradictory to his testimony delivered on the trial, the State is permitted to support the witness by showing that shortly after the transaction he made statements of the matter similar to his evidence delivered on the trial, citing Goode v. The State, 32 Texas Crim. Rep., 505; Sentell v. The State, 34 Texas Crim. Rep., 260; Hamilton v. The State, 36 Texas Crim. Rep., 372; Johnson v. The State, 42 Texas Crim. Rep., 377; Lee v. The State, 44 Texas Crim. Rep., 460; and a long list of other authorities cited under that section.

It appears by several bills that in rebuttal the State was permitted to prove by a number of witnesses that the reputation of the State's witnesses Timbs and Jacobs for truth and veracity was good. The court in approving the bill states: "The witnesses were bitterly assailed by the defendant on cross-examination, the line of examination indicating that said witnesses had sworn falsely. Defendant also introduced witnesses impeaching both of said witnesses by showing that said witnesses had made statements and had done things in regard to the case which they denied making and doing while testifying." The defendant accepted this bill as qualified and files it, consequently is bound thereby. (See authorities above cited.) If the defendant sought to impeach the witnesses by proving contradictory

statements, the evidence was admissible under all of our decisions. The rule is thus laid down: "Either side is entitled to prove general reputation for truth and veracity of witness who has been impeached or sought to be impeached by proof of contradictory statements." (Burrell v. The State, 18 Texas, 713; Graham v. The State, 57 Texas Crim. Rep., 104; Anderson v. The State, 53 Texas Crim. Rep., 525; Brown v. The State, 52 Texas Crim. Rep., 267, and authorities cited under section 877, Branch's Crim. Law.) In some other bills it is complained that some of the witnesses ought not have been permitted to testify to their reputation for truth and veracity because the witness answered on cross-examination that he had never heard anyone talk about the reputation of the witnesses named. This has been decided adversely to appellant's contention. (Tyler v. The State, 46 Texas Crim. Rep., 10; Trammell v. State, 10 Texas Crim. App., 467; Reid v. State, 57 S. W. Rep., 662.) There is no better evidence of a man's good reputation than that he has lived in a given community for a number of years and that it was never brought in question.

The witness Mrs. Cora Watson was permitted to testify: "Last year I lived at Divide with my husband, Dennis Watson; we are divorced now. I know the defendant, and know where his place of business is. Last fall I accompanied my husband to Brashear one day and we went to defendant's place of business. My husband purchased a jug of cider; it was so-called cider but it made him drunk. When he went there he was perfectly sober. We traded quite a few groceries with defendant that day and at last my husband told him he wanted a jug of cider, he had been getting cider somewhere. I didn't know where, but he got the jug of cider there and he selected it from twenty-five or thirty other jugs and he went around the corner and taken up the jug and paid him the money; I don't know how much. He got the jug over in the corner from the other jugs, he didn't take up the first one he came to, got it from the southwest corner of the house. It was a glass gallon jug. After that me and my husband went home. I know that he drank this cider and it made him drunk. That was early last fall, 1910." The defendant objected that it was offered in rebuttal, and was not in rebuttal of anything brought out by him. The court in approving the bill states the defendant, while testifying in his own behalf, had stated that he had never at any time sold intoxicating liquor to anyone, and this purchase was within the period covered by the indictment. It is provided by article 698 of the Code of Criminal Procedure, that "the court shall allow testimony to be introduced at any time before argument of a cause is concluded, if it appear that it is necessary to the due administration of justice." The testimony in this case was introduced before the testimony was closed, and this has always been held to be a matter within the sound discretion of the court trying the case. (For authorities see section 766, White's Ann. Code of Criminal Procedure.) The only other bill in the record relates to the testimony of the

witness E. Jenkins. It appears that defendant was recalled, and asked if he had sold intoxicating liquors to the witness E. Jenkins, and when he denied doing so, the witness Jenkins was permitted to testify that he had purchased a quart of whisky from defendant and paid him one dollar therefor. The objection to this testimony was that the transaction "antedated the beginning of the application of the law under which the defendant is being prosecuted herein, and because it is permitting the State to impeach the defendant upon an immaterial matter, and a matter highly prejudicial to him." The transaction testified to by the witness Jenkins occurred some time prior to the date alleged in the indictment in this case, and we do not think it admissible for the purpose of impeaching defendant. If he sold the witness Jenkins intoxicating liquor at the time named, no prosecution had been begun, and a single sale of intoxicating liquor in Hopkins County, being a misdemeanor only, the transaction would not involve an offense constituting moral turpitude under the decisions of this court. But the insistence in the argument in this case, that it could not be admissible because it would show another, and different offense, can not be sustained. It is true this court has held, and it is the law of this State, where a man is prosecuted for making a single sale of intoxicating liquors, evidence of other sales is not ordinarily admissible, and if this was a prosecution for making a single sale of intoxicating liquors it would have been error to have admitted the testimony, but the defendant was being prosecuted for the offense of pursuing the *business or occupation* of selling intoxicating liquors, and in this character of case evidence of other sales are admissible to show the character of business or occupation in which one is engaged. One, two, or three isolated sales might not show that one was engaged in that business, but each and every sale shown would have a tendency to prove that fact and would be admissible in evidence, as would the fact that one kept whisky constantly on hand in his place of business, the amount received by him and all these circumstances might show that he was engaged in that business. The evidence shows that defendant received by express from June 1, 1910, to July 5, 1911, two hundred and forty-five quarts of whisky consigned to defendant or W. T. Dickson & Co. It also shows that a quantity was received by S. L. Dickson & Co., and defendant's brother, S. L. Dickson, testified that when whisky was so consigned, defendant was interested therein. The evidence would further show that when the whisky was received consigned to John Jacobs & Co., ordered in that way, it was carried to defendant's place of business. In a prosecution for pursuing the business of selling intoxicating liquors all such testimony is admissible as tending to show the character of business in which one is engaged. (Walker v. The State, recently decided by this court and cases therein cited.) The only serious question as to the testimony of the witness Jenkins, is, was it too remote in time to aid the jury in passing on the question of whether or not defendant was engaged in the business

of selling intoxicating liquor at the time alleged in the indictment? This question is discussed in French v. The State, 47 Texas Crim. Rep., 572, and has been frequently before this court, and the rule seems to be that isolated transactions long prior to the offense charged would not be admissible in evidence, but if the evidence in the particular case would indicate that no change had taken place, but that the same course of business had been continuous from the date of such transaction to the date alleged in the indictment, and the evidence tended to shed light on the transaction, it would not be inadmissible because of remoteness. This case was tried on or about September 29, 1911, and the witness testified that about three years prior to that date he was standing on the gallery of defendant's store and remarked to defendant that "he wished he had some snake medicine," when defendant replied if he (witness) would keep his mouth shut he would let him have a quart, and defendant went in his store and sold him a bottle of Old Hayner whisky for one dollar. The indictment in this case covers a period from June 14, 1910. The evidence of defendant would indicate that he had been engaged in the same line of business for three or four years, he saying he ordered whisky from Vogt, Appelgate & Co.; that he had order blanks from them for making orders; that he drank a whole lot, and kept it hid in the store; that every order he had made for the last three or four years somebody was interested with him. This and other evidence in the case would indicate that during the whole period of time he was engaged in the same character of business, and under this evidence we do not think the evidence of the witness Jenkins so remote as to present reversible error. This disposes of all the bills of exceptions in the record, and the other grounds in the motion complaining of errors in regard to the evidence can not be considered. There are several complaints of the charge of the court, the first being to the following paragraph:

"In order to constitute engaging in or pursuing the occupation or business of selling intoxicating liquors, it is necessary for the State to prove beyond a reasonable doubt that the defendant, Bill Dickson, unlawfully engaged in and followed the occupation and business of selling intoxicating liquors in Hopkins County, Texas, at any time between the month of June, 1910, and the 22d day of July, 1911, and that the defendant unlawfully made at least two different sales of intoxicating liquor between said dates in Hopkins County, Texas, to the parties named in the indictment; but it is not required that the State should show that said business or occupation was the defendant's principal business or occupation, or that he gave the whole, or the greater part of his time to said business. A person may engage in his usual occupation or avocation and yet secretly and covertly sell intoxicating liquors whenever the opportunity presented itself and would be guilty, under the law governing this case, of engaging in or pursuing the occupation or business of selling intoxicating liquors." The objections urged, being that it is not a proper definition of "occupation"

or "business;" that it is argumentative and too restrictive, and is upon the weight of the evidence. This charge is in accordance with the holding of this court in the case of Fitch v. State, 58 Texas Crim. Rep., 366, 127 S. W. Rep., 1040, and Clark v. State, 61 Texas Crim. Rep., 597, 136 S. W. Rep., 260, and we do not deem it necessary to again discuss the objections named.

Again, appellant complains of the following paragraph of the court's charge: "If, therefore, you believe from the evidence beyond a reasonable doubt that between the month of June, 1910, and the 22d day of July, 1911, the sale of intoxicating liquors was prohibited in Hopkins County, Texas, under the laws of this State and that the defendant, Bill Dickson, did at any time between said dates in Hopkins County, Texas, unlawfully engage in and pursue the occupation and business of selling intoxicating liquors, as alleged in the indictment, and if you believe that the defendant unlawfully in said county and State, between said dates and at or about the dates alleged in the indictment, did make as many as at least two different sales of intoxicating liquors to the parties named in the indictment, then you will find the defendant guilty as charged; but unless you so believe you will acquit him." This charge is also in conformity to the rule announced in the Fitch and Clark cases, supra. It did not authorize the jury to convict defendant if he made only two sales, but instructs them they must find beyond a reasonable doubt that he pursued the occupation or business, and in addition to that fact, made at least two sales. This is in conformity with the statute. Ordinarily to convict one of pursuing a given occupation it is not necessary to prove that a single sale was made, but only that one was holding himself out and offering to make sales; but this statute has placed upon the State the additional burden of proving at least two sales after proving that one is engaged in the occupation or business, before a conviction would be authorized. What is termed supplemental charge is not upon the weight of the testimony.

The defendant had testified that he was engaged in ordering whisky frequently for others, and had ordered whisky for the State's witnesses Timbs and Jacobs. The court instructed the jury:

"If you believe that the defendant ordered for accommodation the whisky for the witnesses Timbs and Jacobs that is charged by the State to have been sold by the defendant to them and that in ordering said whisky, if he did, he was acting as the agent of the purchasers and not as the agent of the seller, then you are charged that such transaction would not constitute a sale by the defendant.

"You are further charged that if the defendant made other orders of intoxicating liquors for other persons, and in making said orders, if he did, he was acting for accommodation and as the agent of the purchasers and not the seller, then such transactions, if any, would not constitute sales." This was but presenting the theory of defendant, and under his evidence was an issue proper to be submitted to

the jury. The court had instructed the jury that they must find beyond a reasonable doubt that defendant was pursuing the occupation or business and had made at least *two sales* to those witnesses, and the charge, under these circumstances would present no error. (Davis v. State, 45 Texas Crim. Rep., 146.) The grounds in the motion, reading as follows, can not be considered, as they are too general and point out no error: "Because the court erred in refusing defendant's special charge No. 1." It has been held by this court that the motion for new trial must point out the error, if error there be, and call the trial court's attention to it specifically, otherwise this court will not review the question on appeal. Ryan v. The State, 64 Texas Crim. Rep., 628, 142 S. W. Rep., 878, and Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W. Rep., 884, and authorities therein cited.

The only other ground in the motion presented in a way we can consider it, complains of the following charge: "You are instructed that it is not necessary under the law that a party should make a profit in his business in order to be guilty of engaging in or pursuing the occupation of selling intoxicating liquors." Appellant complains that, "It was error to give this charge because it became an improper limitation upon the correct definition of 'occupation' and 'business' as those terms are used in this statute, and was, for that reason, prejudicial to the rights of the defendant." This would not be a limitation on the definition of "occupation" and "business." Defendant in his testimony said, when testifying about ordering whisky for others: "When these parties would order whisky with me they would always pay me the cash, or some of them would run an account with me and when they were good and paid up their accounts all right, I would just charge theirs to them as cash and enter it that way on the books —put it right in their accounts. I always charged them exactly what it cost." Under this testimony it was proper to give the above charge, for under the decisions of this court every time he ordered whisky for one of his customers and charged it to their account at the store, to be paid for when the remainder of the account was paid, each of such transactions would constitute a sale. For a full review of the decisions see Coleman v. State, 53 Texas Crim. Rep., 578, and Branch's Crim. Law, section 565. Not only would each of such transactions constitute a sale, but it would be a strong circumstance to show that defendant was engaged in the business of selling intoxicating liquors.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge.—I have written so often in dissent, I deem it unnecessary to write further.